**KUZYK LAW, LLP**
Michael D. Braun (SBN 167416)
*mdb@kuzykclassactions.com*
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone: (213) 401-4100
Facsimile: (213) 401-0311

**LAW OFFICES OF PETER N. WASYLYK**
Peter N. Wasylyk (pro hac vice forthcoming)
*pnwlaw@aol.com*
1307 Chalkstone Avenue
Providence, RI 02908
Telephone: (401) 831-7730
Facsimile: (401) 861-6064

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

**KENYA WINSTON, on behalf of herself and all others similarly situated,**

**Plaintiff,**

**v.**

**THE HONEST COMPANY, INC.,**

**Defendant**

**CASE NO.:** 3:26-cv-12779

**<u>CLASS ACTION</u>**

**COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF**

**DEMAND FOR JURY TRIAL**

Plaintiff Kenya Winston ("Plaintiff"), on behalf of herself and all others similarly situated, brings this class action against The Honest Company, Inc. ("Honest" or "Defendant") and on the basis of personal knowledge, information and belief, and the investigation of counsel, alleges as follows:

## INTRODUCTION

1. This is a proposed class action on behalf of a nationwide class and a California subclass (collectively, "Class") of consumers seeking redress for Defendant's deceptive practices associated with the advertising, labeling, and sale of its Honest Conditioning Detangler and Shampoo + Body Wash products that, despite claiming to be "Hypoallergenic," contain the fragrance allergens linalool and limonene ("Products" or "Class Products").[1]

2. Allergen-related contact allergy is an inflammation or irritation (e.g., rash) that results from an allergen coming in contact with the skin. It affects 20% of the population. As skin sensitivities have become more common, consumers increasingly seek out and rely on terms like "hypoallergenic" when making purchasing decisions about personal care products.

3. Defendant sells the Products, each of which claims to be "Hypoallergenic." The materiality of the representation is evident by its prominent placement on the principal display panel, in a badge bearing the image of a smiling infant. In each instance, the Products also contain linalool and/or limonene -- fragrance ingredients that the federal Food and Drug Administration ("FDA") lists

[1] The Class Products are The Honest Company Conditioning Detangler, Calm (Lavender) (the "Lavender Product"); The Honest Company Conditioning Detangler, Refresh (Citrus Vanilla) (UPC Nos. 817810012198 and 810022912447) (the "Citrus Vanilla Product," and together with the Lavender Product, the "Detangler Products"); The Honest Company Shampoo + Body Wash, Comfort (Sweet Cream) (the "Sweet Cream Shampoo"); and The Honest Company Shampoo + Body Wash, Calm (Lavender) (the "Lavender Shampoo," and together with the Sweet Cream Shampoo, the "Shampoo + Body Wash Products").

among the 26 fragrance allergens that are "substances that cause most allergic reactions from the use of cosmetic products."[2]




---

[2] U.S. Food & Drug Administration, *Allergens in Cosmetics*. Available at https://www.fda.gov/cosmetics/cosmetic-ingredients/allergens-cosmetics. Last visited October 21, 2026.




4. The American Academy of Dermatology ("AAD") has recognized fragrances (and their constituent ingredients) as a common skin irritant, source of allergens and a leading cause of allergic contact dermatitis. The FDA has similarly acknowledged that many cosmetics and personal care products may contain allergens within their dyes, preservatives and fragrances. The European Union identified, and

the federal Food and Drug Administration ("FDA") reproduces, a list of 26 of the most significant fragrance constituents that "cause most allergic reactions from the use of cosmetic products." Among them, linalool and d-limonene.

5. Defendant itself reported the presence of linalool and limonene in its Products to the California Safe Cosmetics Program, administered by the California Department of Public Health. It did so pursuant to the Cosmetic Fragrance and Flavor Ingredient Right to Know Act of 2020, which requires manufacturers to report to the Department any fragrance allergen listed in Annex III of the EU Cosmetics Regulation No. 1223/2009 that is present in a cosmetic product sold in California above specified thresholds.[3]

6. The term "hypoallergenic" communicates to reasonable consumers that a product is specifically formulated to reduce the likelihood of allergic reactions, including, but not limited to, by avoiding the intentional inclusion of commonly recognized contact allergens. A reasonable consumer who selects a product labeled "Hypoallergenic" does so expecting that, at a minimum, the product does not contain commonly recognized fragrance allergens.

7. Reasonable consumers do not possess the scientific knowledge necessary to discern the presence of fragrance allergens. Reasonable consumers must and do rely on manufacturers to honestly represent the qualities of their Products and ingredients.

8. Consumers, like Plaintiff, have been deceived by Defendant's false and misleading claims that its Products are "Hypoallergenic." As a result of their reliance on Defendant's misrepresentations, Plaintiff and Class Members have suffered an ascertainable loss of money, including, but not limited to, out-of-pocket costs incurred

[3] California Safe Cosmetics Program Product Database. Available at https://cscpsearch.cdph.ca.gov/search/publicsearch; See also, https://cscpsearch.cdph.ca.gov/search/detailresult/1347 (Linalool is a fragrance allergen). Last visited October 21, 2026.

in purchasing the Products or having paid a price premium for the Products as compared to other products that do not make the same false and deceptive claims.

9. Throughout the applicable Class Period, Defendant has falsely represented the true nature of its Products, and as a result of this false and misleading labeling, was able to sell these Products to hundreds of thousands of unsuspecting consumers throughout California and the United States.

10. Defendant's conduct is in breach of warranty, violates California's Business and Professions Code § 17200, *et seq.*, California's Business & Professions Code § 17500, *et seq.*, and California Civil Code § 1750, *et seq.*

## **JURISDICTION AND VENUE**

11. Jurisdiction of this Court is proper under 28 U.S.C. § 1332(d)(2). Plaintiff Winston is a citizen of California. Defendant The Honest Company, Inc. is a Delaware corporation with its principal place of business in Los Angeles, California. The proposed Nationwide Class includes consumers in every State, and at least one member of the Class is a citizen of a State different from Defendant. The amount in controversy exceeds $5,000,000 for the Plaintiff and members of the Class collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiff and members of the putative Class, and the profits reaped by Defendant from its transactions with Plaintiff and the Class, as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the injunctive and equitable relief sought.

12. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in California, and because Defendant markets, distributes, and sells the Products in California and in this judicial district.

13. Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this judicial district, including Plaintiff's purchases of the Products at retail stores located

in San Francisco, California, and because Defendant transacts substantial business and sells the Products within this judicial district.

14. Divisional Assignment. Pursuant to Civil L.R. 3-2(c) and (d), assignment to the San Francisco Division is proper because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the City and County of San Francisco, where Plaintiff resides and purchased the Products.

## PARTIES

15. Plaintiff Kenya Winston is a resident of San Francisco, California.

16. Ms. Winston purchased each of the Class Products on multiple occasions within the past three years from Safeway and Target stores located in San Francisco, California.

17. Ms. Winston made her purchases after reading and relying on Defendant's Product labels, specifically the representation that each of the Products was "Hypoallergenic."

18. Ms. Winston reasonably believed that the "Hypoallergenic" representation meant that the Products were formulated to reduce the likelihood of allergic reactions and did not contain fragrance allergens.

19. Ms. Winston believed that Defendant lawfully marketed and sold the Products.

20. Ms. Winston relied on Defendant's labeling and was misled thereby.

21. Ms. Winston would not have purchased the Products, or would have been willing to purchase them on different terms, had she known the truth -- *i.e.*, that the Products were not "Hypoallergenic," but instead contained linalool, limonene and other fragrance allergens.

22. Ms. Winston was injured in fact and lost money as a result of Defendant's improper conduct.

23. Plaintiff and members of the Class have been economically damaged by their purchases of the Products because the Product advertising was deceptive and/or misleading. Therefore, the Products are worth less than what Plaintiff and members of the Class paid for them and/or Plaintiff and members of the Class did not receive what they reasonably intended to receive.

24. Defendant The Honest Company, Inc. is a Delaware corporation headquartered at 12130 Millennium Drive, Suite 500, Los Angeles, California 90094.[4] Founded in 2012, Honest markets personal care products "for everyone from babies to adults," and reported revenue of $371.3 million in 2025.[5] Its products, including the Products at issue in this litigation, are available for purchase online and in retail locations throughout the country.

## GENERAL ALLEGATIONS

### A. THE MARKET FOR HYPOALLERGENIC PRODUCTS

25. A significant portion of the U.S. population has allergies that are triggered by skin care products. Allergic contact allergy is one of the most prevalent skin diseases in the U.S., affecting 20% of the population.[6] Personal care products frequently contain ingredients that may cause allergic contact dermatitis.

26. The risk of contact dermatitis from fragrance chemicals increases for those with compromised skin barriers. For individuals with sensitive skin or

---

[4] The Honest Company, Inc., Annual Report (Form 10-K) for the fiscal year ended December 31, 2025. Available at https://www.sec.gov/Archives/edgar/data/1530979/000162828026011634/hnst-20251231.htm. Last visited October 21, 2026.

[5] The Honest Company, *The Honest Company Reports Fourth Quarter and Full Year 2025 Financial Results*. Available at https://investors.honest.com/news-releases/news-release-details/honest-company-reports-fourth-quarter-and-full-year-2025/. Last visited October 21, 2026.

[6] Alinaghi, F., et al., *Prevalence of contact allergy in the general population: A systematic review and meta-analysis*, October 29, 2018. Available at https://doi.org/10.1111/cod.13119. Last visited October 21, 2026.

conditions like eczema, rosacea, or psoriasis, the use of fragranced products can be particularly problematic, exacerbating these conditions over time.

27. Even when there is no visible redness or rashes after using a product with fragrance chemicals, there may be inflammation at the cellular level and long-term consequences if use is prolonged. With repeated exposure over time, even individuals who initially tolerate fragranced products may develop allergies or sensitivities, sometimes leading to chronic skin issues.

28. Given the increased prevalence of allergic contact dermatitis and other skin conditions, consumers increasingly seek clean products looking for and relying on terms such as "hypoallergenic" in making purchasing decisions. Those who do not already suffer from skin allergies commonly seek products to avoid developing skin allergies. Those who suffer from skin allergies, or have family members who suffer from skin allergies, seek products to avoid allergens that will exacerbate or prolong their conditions. Parents and grandparents of infants and young children, whose skin is especially delicate, are particularly attentive to such representations.

29. Personal care companies, such as Honest, have seized on this burgeoning market opportunity taking every chance to label and promote their products with terms such as "natural," "clean," and "hypoallergenic." As a result, the global sensitive skin care products market, valued at approximately $52.7 billion in 2025, is projected to reach $104.3 billion by 2033.[7]

## B. LINALOOL AND LIMONENE ARE FRAGRANCE ALLERGENS

30. Linalool is a terpene alcohol and one of the most widely used fragrance ingredients in cosmetic and personal care products. It is a clinically established

---

[7] Grand View Research, *Sensitive Skin Care Products Market (2026-2033)*. Available at https://www.grandviewresearch.com/industry-analysis/sensitive-skin-care-products-market-report. Last visited October 21, 2026.

contact allergen capable of provoking allergic contact dermatitis, particularly with prolonged or repeated exposure. The European Union's Scientific Committee on Consumer Safety ("SCCS") classifies linalool as an "[e]stablished contact allergen[] in humans."[8] It is defined as a fragrance allergen by the California Department of Public Health which is required to be reported due to the hazard it poses to individuals who suffer from fragrance allergies.[9]

31. Linalool's allergenic potential increases upon exposure to air. As linalool oxidizes, it forms hydroperoxides that are potent skin sensitizers. In an international multicenter study of 2,900 consecutive dermatitis patients, 6.9% (range 3-13%) tested positive for contact allergy to oxidized linalool, leading the authors to conclude that "oxidized linalool has been shown to be a common allergen."[10] The Detangler Products are dispensed as a spray, which exposes linalool to air, and are leave-in conditioners that remain on the hair and skin after application. The Shampoo + Body Wash Products are lathered directly onto the scalp and skin -- including, as their labels direct, "baby's damp skin and hair."

32. Limonene is a monoterpene and the principal constituent of citrus peel oils, which can consist of 70% to 98% limonene[11] -- including the orange peel oil that

---

[8] EU Scientific Committee on Consumer Safety, *Opinion on Fragrance Allergens in Cosmetic Products* (adopted June 26-27, 2012), Table 13-1 ("Established contact allergens in humans"). Available at https://ec.europa.eu/health/scientific_committees/consumer_safety/docs/sccs_o_102.pdf; *see also* https://ec.europa.eu/health/scientific_committees/opinions_layman/perfume-allergies/en/figtableboxes/table-13-1.htm. Last visited October 21, 2026.

[9] California Department of Public Health. Available at https://cscpsearch.cdph.ca.gov/search/detailresult/1347

[10] Bråred Christensson, J., et al., *Air-oxidized linalool: a frequent cause of fragrance contact allergy*, 67 Contact Dermatitis 247 (2012), doi:10.1111/j.1600-0536.2012.02134.x. Available at https://pubmed.ncbi.nlm.nih.gov/22906042/. Last visited October 21, 2026.

[11] Jongedijk, E., et al., *Biotechnological production of limonene in microorganisms*, 100 Appl. Microbiol. Biotechnol. 2927 (2016), doi:10.1007/s00253-016-7337-7. Available at

Defendant reported as a fragrance ingredient in the Citrus Vanilla Product. The SCCS likewise classifies limonene as an "[e]stablished contact allergen[] in humans."[12] Like linalool, limonene autoxidizes on exposure to air, forming hydroperoxides that are potent skin sensitizers. In the same international multicenter study of 2,900 consecutive dermatitis patients, 5.2% (range 2.3-12.1%) tested positive for contact allergy to oxidized limonene, and the investigators concluded that "[o]xidized R-limonene is a common fragrance allergen."[13]

33. It is defined as a fragrance allergen by the California Department of Public Health which is required to be reported due to the hazard it poses to individuals who suffer from fragrance allergies.[14]

34. Internationally, the European Union has classified linalool and d-limonene as fragrance allergens under Annex III of the EU Cosmetics Regulation No. 1223/2009 since both were included among the original 26 fragrance allergens designated by Directive 2003/15/EC. The EU requires its individual disclosure on product labels when present above specified concentration thresholds (0.001% in leave-on products, 0.01% in rinse-off products).[15] In 2023, the European Union

---

https://pmc.ncbi.nlm.nih.gov/articles/PMC4786606/ ("Citrus oil can contain 70–98 % of (+)-limonene"). Last visited October 22, 2026.

[12] EU Scientific Committee on Consumer Safety, *Opinion on Fragrance Allergens in Cosmetic Products*, Table 13-1, *supra* at note 8.

[13] Bråred Christensson, J., et al., *Positive patch test reactions to oxidized limonene: exposure and relevance*, 71 Contact Dermatitis 264 (2014), doi:10.1111/cod.12285. Available at https://pubmed.ncbi.nlm.nih.gov/25099087/. Last visited October 22, 2026.

[14] California Department of Public Health. Available at https://cscpsearch.cdph.ca.gov/search/detailresult/2507. The Citrus Vanilla Product also contains Vanillin and Citrus Aurantium Peel Oil. The Lavender Product also contains Linalyl Acetate, Vanillin and Lavandula oil/extract all of which are also categorized as fragrance allergens further rendering the hypoallergenic claims false and misleading. See, also https://cscpsearch.cdph.ca.gov/search/searchresult/192944.

[15] *See* EU Regulation 1223/2009, Annex III. Available at https://eur-lex.europa.eu/legal-content/en/TXT/HTML/?uri=CELEX%3A32009R1223; European Commission, *List of 26 allergenic substances classified in accordance with Directive 2003/15/EC*. Available at

expanded Annex III to include, among others, linalyl acetate, vanillin, and lavender oil, each of which Defendant also reported as fragrance allergens.[16]

35. The FDA has similarly acknowledged that many cosmetics and personal care products contain allergens within their dyes, preservatives and fragrances. The FDA notes the 26 fragrance allergens identified by the EU as among the allergens "that cause most allergic reactions from the use of cosmetic products." Among them, linalool and d-limonene.[17]

36. California law independently classifies linalool and limonene as fragrance allergens that pose an allergenic risk to consumers. The Cosmetic Fragrance and Flavor Ingredient Right to Know Act of 2020 ("CFFIRKA"), codified at California Health & Safety Code § 111792.6, requires manufacturers to report the presence of fragrance allergens such as linalool and limonene to the California Department of Public Health.[18] Fragrance allergens are reportable under CFFIRKA when present in a rinse-off cosmetic product at a concentration at or above 0.01 percent (100 parts per million) or in a leave-on cosmetic product at a concentration at or above 0.001 percent (10 parts per million).[19] The thresholds represent the

---

https://ec.europa.eu/docsroom/documents/14119/attachments/1/translations/en/renditions/native. Last visited October 21, 2026.

[16] Commission Regulation (EU) 2023/1545 of 26 July 2023, amending Annex III of Regulation (EC) No 1223/2009. Available at https://eur-lex.europa.eu/eli/reg/2023/1545/oj/eng. Last visited October 21, 2026.

[17] U.S. Food & Drug Administration, *Allergens in Cosmetics*. Available at https://www.fda.gov/cosmetics/cosmetic-ingredients/allergens-cosmetics. Last visited October 21, 2026.

[18] California Safe Cosmetics Program Product Database, *1,6-Octadien-3-ol, 3,7-dimethyl- (LINALOOL)* (CAS RN 78-70-6). Available at https://cscpsearch.cdph.ca.gov/search/; *see also* California Department of Public Health, *Fragrance Allergens*. Available at https://www.cdph.ca.gov/Programs/CCDPHP/DEODC/OHB/CSCP/Pages/FragranceAllergens.aspx. Last visited October 21, 2026.

[19] California Department of Public Health, *Different Types of Ingredients and When They Must Be Reported*. Available at

scientifically derived concentrations above which already-sensitized consumers are likely to experience allergic reactions.[20] Accordingly, unlike other fragrance ingredients, fragrance allergens must be reported regardless of their intended purpose if they are present in the product at or above this concentration.[21]

## C. DEFENDANT REPORTED FRAGRANCE ALLERGENS IN THE PRODUCTS

37. Pursuant to its obligations under the California Safe Cosmetics Act of 2005 ("CSCA") and CFFIRKA, Defendant reported the presence of linalool in the Lavender Product and listed its function as "Fragrance." Defendant also reported linalyl acetate, vanillin, beta-myrcene, and lavender oil, each with the function "Fragrance." Defendant reported that the Lavender Product is a leave-in hair conditioner intended for "Baby," "Children," and the "General population."

---

https://www.cdph.ca.gov/Programs/CCDPHP/DEODC/OHB/CSCP/Pages/ReportingGuidance.aspx. Last visited October 21, 2026.

[20] EU Scientific Committee on Consumer Safety, *Skin Sensitization Quantitative Risk Assessment for Fragrance Ingredients*, July 30, 2018. Available at https://health.ec.europa.eu/publications/skin-sensitisation-quantitative-risk-assessment-fragrance-ingredients-qra2-submission-i_en. Last visited October 21, 2026.

[21] California Department of Public Health, California Safe Cosmetics Program, *Compliance Information for Cosmetics Companies and Frequently Asked Questions*. Available at https://www.cdph.ca.gov/Programs/CCDPHP/DEODC/OHB/CSCP/Pages/Compliance-FAQ.aspx. Last visited October 21, 2026.

Conditioning Detangler, Calm Lavender

Brand: The Honest Company
Company: The Honest Company

Categories

Hair Conditioners (leave-in)

Intended Markets

Baby
Children
General population

Forms

Spray - Non-Aerosol

UPCs

810094550134

810094553852

**Ingredients Reported and its Function**

1,6-Octadien-3-Ol, 3,7-Dimethyl- (LINALOOL) - Fragrance
Reported 10/02/2026

3,7-Dimethyl Octa-1,6-Diene-3-Yl Acetate (Linalyl Acetate) - Fragrance
Reported 10/02/2026

4-Hydroxy-3-Methoxybenz-Aldehyde (Vanillin) - Fragrance
Reported 10/02/2026

Beta-Myrcene (Myrcene) - Fragrance
Reported 10/02/2026

Lavandula Oil/Extract (Lavandula Hybrida Oil/Extract; Lavandula Intermedia Oil/Extract; Lavandula Angustifolia Oil/Extract; Lavandula Hybrida Oil; Lavandula Hybrida Extract; Lavandula Hybrida Flower Extract; Lavandula Intermedia Flower/Leaf/Stem Extract; Lavandula Intermedia Flower/Leaf/Stem Oil; Lavandula Intermedia Oil; Lavandula Angustifolia Oil; Lavandula Angustifolia Flower/Leaf/Stem Extract; Lavandula Angustifolia (Lavender) Flower Extract; Lavandula Angustifolia (Lavender) Flower Oil; Lavandula Angustifolia (Lavender) Flower/Leaf/Stem Extract; Lavandula Angustifolia (Lavender) Flower/Leaf/Stem Juice; Lavandula Angustifolia (Lavender) Flower/Leaf/Stem Oil; Lavandula Angustifolia (Lavender) Oil) - Fragrance
Reported 10/02/2026

*CSCP Product Database -- Conditioning Detangler, Calm Lavender*[22]

38. Defendant reported the presence of d-limonene, vanillin, and orange peel oil in the Citrus Vanilla Product, each with the function "Fragrance," and likewise reported that the Citrus Vanilla Product is a leave-in hair conditioner intended for "Baby," "Children," and the "General population."

[22] California Safe Cosmetics Program Product Database, *Conditioning Detangler, Calm Lavender* (Product ID 192944; Product Entered 10/02/2026). Available at https://cscpsearch.cdph.ca.gov/search/searchresult/192944. Last visited October 22, 2026.

conditioning detangler, everyday gentle

Brand: The Honest Company
Company: The Honest Company

Categories

Hair Conditioners (leave-in)

Intended Markets

Baby
Children
General population

Forms

Spray - Non-Aerosol

UPCs

810022912447

817810012198

**Ingredients Reported and its Function**

4-Hydroxy-3-Methoxybenz-Aldehyde (Vanillin) - Fragrance
Reported 10/02/2026

Citrus Aurantium Peel Oil (Citrus Aurantium Amara Peel Oil; Citrus Aurantium Dulcis Peel Oil; Citrus Sinensis Peel Oil; Citrus Aurantium Amara (Bitter Orange) Peel Oil; Citrus Aurantium Dulcis (Orange) Peel Oil; Citrus Sinensis (Orange) Peel Oil) - Fragrance
Reported 10/02/2026

Limonene (1-Methyl-4-Prop-1-En-2-Yl-Cyclohexene; Dl-Limonene (Racemic); Dipentene; (R)-P-Mentha-1,8-Diene; (D-Limonene); (S)-P-Mentha-1,8-Diene; (L-Limonene)) - Fragrance
Reported 03/09/2022

**Report Details**

Product Entered 03/09/2022
Last Updated 10/02/2026
If a product has been reformulated and the reported ingredient removed from the product, "Date Removed" refers to the date of reformulation.

The cosmetics ingredients listed here were reported to the California Safe Cosmetics Program (CSCP). Not all information has been verified. Reporting is required regardless of the amount of the ingredient in the product. Inclusion of a product in this database does not necessarily mean that it has been shown to

*CSCP Product Database -- conditioning detangler, everyday gentle (Citrus Vanilla)*[23]

39. Defendant likewise reported linalool and limonene, each with the function "Fragrance," in the Sweet Cream Shampoo, and reported linalool, linalyl acetate, vanillin, beta-myrcene, and lavender oil, each with the function "Fragrance," in the Lavender Shampoo. Defendant reported that both Shampoo + Body Wash Products are baby shampoos and baby washes intended for "Baby," "Children," and the "General population."

[23] California Safe Cosmetics Program Product Database, *conditioning detangler, everyday gentle* (Product ID 100608; Product Entered 03/09/2022; Last Updated 10/02/2026). Available at https://cscpsearch.cdph.ca.gov/search/searchresult/100608. Last visited October 22, 2026.

Shampoo and Body Wash, Sweet Cream

Brand: The Honest Company
Company: The Honest Company

Categories

Baby Shampoos
Hair Shampoos (making a cosmetic claim)
Baby Wash/Soap
Body Washes and Soaps

Intended Markets

Baby
Children
General population

Forms

Cream/Gel/Foam

Liquid

UPCs

0810022914977

810022914977

810094554514

**Ingredients Reported and its Function**

2H-1-Benzopyran-2-One (COUMARIN) - Fragrance
Reported 08/03/2022

4-Hydroxy-3-Methoxybenz-Aldehyde (Vanillin) - Fragrance
Reported 10/02/2026

Benzaldehyde - Fragrance
Reported 10/02/2026

CITRAL - Fragrance
Reported 08/03/2022

Citrus Limon Oil (Citrus Limon Peel Oil; Citrus Limon (Lemon) Peel Oil) - Fragrance
Reported 10/02/2026

GERANIOL - Fragrance
Reported 08/03/2022

Limonene (1-Methyl-4-Prop-1-En-2-Yl-Cyclohexene; Dl-Limonene (Racemic); Dipentene; (R)-P-Mentha-1,8-Diene; (D-Limonene); (S)-P-Mentha-1,8-Diene; (L-Limonene)) - Fragrance
Reported 08/03/2022

LINALOOL - Fragrance
Reported 08/03/2022

**Report Details**

Product Entered 08/03/2022
Last Updated 10/02/2026
If a product has been reformulated and the reported ingredient removed from the product, "Date Removed" refers to the date of reformulation.

The cosmetics ingredients listed here were reported to the California Safe Cosmetics Program (CSCP). Not all information has been verified. Reporting is required regardless of the amount of the ingredient in the product. Inclusion of a product in this database does not necessarily mean that it has been shown to cause harm. For more on which companies are required to report to the CSCP and the chemicals included in the CA Safe Cosmetics Act, please refer to the FAQ section of this website.

*CSCP Product Database -- Shampoo and Body Wash, Sweet Cream*[24]

[24] California Safe Cosmetics Program Product Database, *Shampoo and Body Wash, Sweet Cream* (Product ID 114261; Product Entered 08/03/2022; Last Updated 10/02/2026). Available at https://cscpsearch.cdph.ca.gov/search/searchresult/114261. Last visited October 22, 2026.

shampoo + body wash, truly calming

Brand: The Honest Company
Company: The Honest Company

Categories

Baby Shampoos
Hair Shampoos (making a cosmetic claim)
Baby Wash/Soap
Body Washes and Soaps

Intended Markets

Baby
Children
General population

Forms

Cream/Gel/Foam

Liquid

UPCs

810094552039

810094553814

810094554125

810094554828

810094554842

810425032360

810425039642

817810027017

817810029776

**Ingredients Reported and its Function**

3,7-Dimethyl Octa-1,6-Diene-3-Yl Acetate (Linalyl Acetate) - Fragrance
Reported 10/02/2026

4-Hydroxy-3-Methoxybenz-Aldehyde (Vanillin) - Fragrance
Reported 10/02/2026

Beta-Myrcene (Myrcene) - Fragrance
Reported 03/09/2022

Lavandula Oil/Extract (Lavandula Hybrida Oil/Extract; Lavandula Intermedia Oil/Extract; Lavandula Angustifolia Oil/Extract; Lavandula Hybrida Oil; Lavandula Hybrida Extract; Lavandula Hybrida Flower Extract; Lavandula Intermedia Flower/Leaf/Stem Extract; Lavandula Intermedia Flower/Leaf/Stem Oil; Lavandula Intermedia Oil; Lavandula Angustifolia Oil; Lavandula Angustifolia Flower/Leaf/Stem Extract; Lavandula Angustifolia (Lavender) Flower Extract; Lavandula Angustifolia (Lavender) Flower Oil; Lavandula Angustifolia (Lavender) Flower/Leaf/Stem Extract; Lavandula Angustifolia (Lavender) Flower/Leaf/Stem Juice; Lavandula Angustifolia (Lavender) Flower/Leaf/Stem Oil; Lavandula Angustifolia (Lavender) Oil) - Fragrance
Reported 10/02/2026

LINALOOL - Fragrance
Reported 03/09/2022

**Report Details**

*CSCP Product Database -- shampoo + body wash, truly calming (Lavender)*[25]

[25] California Safe Cosmetics Program Product Database, *shampoo + body wash, truly calming* (Product ID 100638; Product Entered 03/09/2022; Last Updated 10/02/2026). Available at https://cscpsearch.cdph.ca.gov/search/searchresult/100638. Last visited October 22, 2026.

40. In addition to linalool and limonene, Defendant reported coumarin, citral, and geraniol in the Sweet Cream Shampoo -- each also among the FDA's 26 fragrance allergens -- together with benzaldehyde, vanillin, and lemon peel oil, which the European Union added to Annex III in 2023. Yet the Sweet Cream Shampoo's ingredient list does not disclose linalool, coumarin, citral, or geraniol. The fragrance ingredients Defendant reported for each of the Products are summarized below:

| Product | Fragrance ingredients Defendant reported to CSCP (function: "Fragrance") | Among FDA's 26 fragrance allergens |
|---|---|---|
| Conditioning Detangler, Calm (Lavender) | Linalool; linalyl acetate; vanillin; beta-myrcene; lavender oil | Linalool |
| Conditioning Detangler, Refresh (Citrus Vanilla) | Limonene; vanillin; orange peel oil | d-Limonene |
| Shampoo + Body Wash, Comfort (Sweet Cream) | Linalool; limonene; coumarin; citral; geraniol; benzaldehyde; vanillin; lemon peel oil | Linalool; d-Limonene; Coumarin; Citral; Geraniol |
| Shampoo + Body Wash, Calm (Lavender) | Linalool; linalyl acetate; vanillin; beta-myrcene; lavender oil | Linalool |

41. The Shampoo + Body Wash Products are rinse-off products. CFFIRKA therefore required Defendant to report a fragrance allergen in those Products only if it was present at or above 0.01 percent (100 parts per million) -- ten times the threshold for leave-on products.[26] Defendant's reports thus indicate that linalool, limonene, and each of the other reported fragrance allergens are present in the Shampoo + Body Wash Products at or above that level.

42. The reporting of these fragrance allergens, independent of their function, acknowledges the presence of fragrance allergens in purportedly "Hypoallergenic" products -- a fact that renders the label claim false and misleading.

[26] California Department of Public Health, *Different Types of Ingredients and When They Must Be Reported*. Available at https://www.cdph.ca.gov/Programs/CCDPHP/DEODC/OHB/CSCP/Pages/ReportingGuidance.aspx. Last visited October 22, 2026.

**D. <u>HYPOALLERGENIC AND THE REASONABLE CONSUMER</u>**

43. Contact allergies to fragrance ingredients occur when a susceptible individual has been dermally exposed to a fragrance allergen present in a consumer product. Sensitization can occur at any time. Once sensitization occurs, re-exposure can trigger allergic contact dermatitis.

44. Although the Food, Drug, and Cosmetic Act ("FDCA") does not define the term "hypoallergenic," the FDA has acknowledged that "[h]ypoallergenic cosmetics are products that manufacturers claim produce fewer allergic reactions than other cosmetic products," and that "[c]onsumers with hypersensitive skin, and even those with 'normal' skin, may be led to believe that these products will be gentler to their skin than non-hypoallergenic cosmetics."[27]

45. Consistent with common understanding, reasonable consumers interpret "hypoallergenic" to mean that a product is formulated to reduce the likelihood of allergic reactions, including by avoiding ingredients recognized as common causes of allergic contact dermatitis. Dictionaries define "hypoallergenic" as "having little likelihood of causing an allergic response,"[28] "designed to be less likely to cause allergic reactions,"[29] and "designed to reduce or minimize the possibility of an allergic response, as by containing relatively few or no potentially irritating substances."[30]

46. The FDA recognizes that "[t]he term 'hypoallergenic' may have considerable market value in promoting cosmetic products to consumers on a retail

---

[27] U.S. Food & Drug Administration, *"Hypoallergenic" Cosmetics*. Available at https://www.fda.gov/cosmetics/cosmetics-labeling-claims/hypoallergenic-cosmetics. Last visited October 21, 2026.

[28] https://www.merriam-webster.com/dictionary/hypoallergenic. Last visited October 21, 2026.

[29] https://dictionary.cambridge.org/us/dictionary/english/hypoallergenic. Last visited October 21, 2026.

[30] https://www.dictionary.com/browse/hypoallergenic. Last visited October 21, 2026.

basis." It explains, "[f]or many years, companies have been producing products which they claim are 'hypoallergenic' or 'safe for sensitive skin' or 'allergy tested.' These statements imply that the products making the claims are less likely to cause allergic reactions than competing products."[31]

47. Defendant reinforces this message throughout the Products' labeling. The "Hypoallergenic" badge features the face of a smiling infant. The back label describes the Products as "Clean Conscious™ formulas for life's most delicate skin."

48. Defendant also sells a "Sensitive (Fragrance Free)" version of the same Conditioning Detangler, the disclosed ingredients of which do not include linalool, d-limonene, vanillin, or lavender oil.[32] Defendant thus knows how to, and does, formulate a detangler without these fragrance allergens. Yet Defendant labels its scented Detangler Products, which contain them, as "Hypoallergenic" all the same. The same is true of the Shampoo + Body Wash Products. Defendant sells a "Sensitive (Fragrance Free)" Shampoo + Body Wash whose disclosed ingredients are otherwise substantially the same as those of the Sweet Cream and Lavender Shampoos, but which contains no linalool, limonene, linalyl acetate, lavender oil, or vanillin.[33] Defendant nonetheless labels its scented Shampoo + Body Wash Products as "Hypoallergenic" as well.

49. Thus, Plaintiff believed, as would any reasonable consumer, that a product labeled "Hypoallergenic" is less likely to cause an allergic response because it is formulated to minimize the presence of common allergens. In other words, Plaintiff and Class members reasonably believed that "Hypoallergenic" as used by Defendant

---

[31] U.S. Food & Drug Administration. "Hypoallergenic" Cosmetics, *supra* note 27.

[32] The Honest Company, *Conditioning Detangler, Refresh*. Available at https://www.honest.com/products/conditioning-detangler-refresh. Last visited October 21, 2026.

[33] The Honest Company, *Shampoo + Body Wash* (listing ingredients for the Sensitive (Fragrance Free), Calm (Lavender), Refresh (Citrus Vanilla), and Comfort (Sweet Cream) variants). Available at https://www.honest.com/products/shampoo-body-wash. Last visited October 22, 2026.

meant that, at a minimum, the Products would not be formulated with known fragrance allergens.

50. Defendant knew that one of the most important representations made on the Products' labels is that they are "Hypoallergenic."

51. Defendant placed the "Hypoallergenic" representation prominently on the Products' principal display panel, demonstrating Defendant's intent that consumers see, notice, and rely upon the statement.

52. Reasonable consumers ascribe a common, shared meaning to words and phrases appearing on product labels, particularly where those words relate to health, safety, or skin sensitivity.

53. Reasonable consumers rely on product labels for their truth and accuracy and are entitled to do so without conducting independent scientific testing or ingredient analysis.

54. Reasonable consumers are not required to conduct research into undisclosed subcomponents of listed ingredients, such as the constituents of botanical extracts or fragrance materials, in order to verify the truthfulness of express label claims.

55. Moreover, Plaintiff and members of the putative class, as reasonable consumers, do not have the scientific background or knowledge to make such a determination.

56. Nor are reasonable consumers required to discount or disbelieve prominent front-of-package representations based on the mere possibility that ingredients may contradict those representations.

57. Instead, it is the responsibility of product manufacturers to ensure that express labeling claims are truthful and not misleading in light of the Products' actual formulation.

58. Plaintiff and Class Members reasonably believed that Defendant's statement that the Products are "Hypoallergenic" was true.

59. Plaintiff and Class Members reasonably understood "Hypoallergenic" to mean that the Products were formulated to reduce the likelihood of allergic reactions as compared to ordinary products, including by avoiding the intentional inclusion of ingredients recognized as common causes of allergic contact dermatitis.

60. This understanding is particularly reasonable where, as here, the Products include fragrance allergens solely for sensory purposes and not for any functional or therapeutic necessity.

61. By deceiving consumers about the nature, quality, and formulation of its Products, Defendant was able to capture market share from competing products and command a price premium, increasing its own sales and profits.

62. At the time Plaintiff and Class Members purchased the Products, they did not know, and had no reason to know, that the "Hypoallergenic" representations were misleading, deceptive, and unlawful.

63. Plaintiff and Class Members would not have purchased the Products, or would have been willing to purchase them on different terms, had they known the truth.

## NO ADEQUATE REMEDY AT LAW

64. Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

65. Broader Statutes of Limitations. The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations for damages claims under the CLRA.

66. Broader Scope of Conduct. The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. The UCL creates a cause of action for violations of other laws, which does not require, among other things, that a reasonable consumer would have been deceived in order to

establish a violation. Thus, Plaintiff and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

67. Defendant continues to misrepresent the Products claiming they are "Hypoallergenic" thereby necessitating injunctive relief in order to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm -- none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm).

68. Finally, this is an initial pleading. The adequacy and availability of all remedies, including legal and equitable, will not be resolved until the case is further advanced upon the closure of discovery, resolution of class certification and any potential summary judgment.

## ECONOMIC INJURY

69. Plaintiff sought to buy Products that were lawfully labeled, marketed, and sold.

70. Manufacturers charge a price premium for products that are labeled as "hypoallergenic." Defendant intentionally included the "Hypoallergenic" representation on the Products' labels and in marketing materials to increase sales and/or charge a premium for the Products.

71. Plaintiff saw and relied on Defendant's misleading labeling of its Products.

72. Defendant knew or should have known that reasonable consumers would consider the representations material in deciding to purchase the Products.

73. Defendant knew or should have known that the representations could plausibly deceive reasonable consumers into believing that the Products are "Hypoallergenic" and at a minimum do not contain common fragrance allergens.

74. Plaintiff believed that the Products were lawfully marketed and sold.

75. In reliance on the claims made by Defendant regarding the qualities of its Products, Plaintiff paid for Products that she would not have purchased or, at a minimum, paid a price premium for the Products.

76. As a result of her reliance on Defendant's misrepresentations, Plaintiff received Products that contained ingredients which she reasonably believed they did not contain.

77. Plaintiff received Products that were unlawfully marketed and sold.

78. Plaintiff lost money and thereby suffered injury as she would not have purchased these Products and/or paid as much for them absent the misrepresentation.

79. Defendant knows that the claim "Hypoallergenic" is material to a consumer's purchasing decision.

80. Plaintiff altered her position to her detriment and suffered damages in an amount equal to the amount she paid for the Products she purchased, and/or in additional amounts attributable to the deception.

81. By engaging in the false and deceptive conduct alleged herein, Defendant reaped and continues to reap financial benefits in the form of sales and profits from its Products.

82. Plaintiff, however, would be willing to purchase products labeled as "Hypoallergenic" in the future, including Defendant's Products, should she be able to rely with confidence on Defendant's labeling as truthful and not deceptive.

83. Absent an injunction, however, Plaintiff will not be able to rely on Defendant's labeling in the future.

## CLASS ACTION ALLEGATIONS

84. Plaintiff brings this action on behalf of herself and on behalf of classes of all other similarly situated consumers defined as follows:

a. Nationwide Class: All persons who purchased the Products in the United States during the applicable Class Period;

b. California Subclass: All persons in California who purchased the Products in California during the applicable Class Period.[34]

85. Class Period is the maximum time allowable as determined by the statute of limitation periods accompanying each cause of action.[35]

86. California law applies to the claims of the Nationwide Class because Defendant is headquartered in California and, upon information and belief, the conduct giving rise to the claims alleged herein -- including the decision to label the Products "Hypoallergenic" -- originated in and emanated from California.

87. Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2), 23(b)(3) and 23(c)(4).

88. Excluded from the Classes are: (i) Defendant and its employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned.

89. Upon information and belief, there are tens of thousands of members of the Class. Therefore, individual joinder of all members of the Class would be impracticable.

---

[34] Collectively referred to as "Class or Classes."

[35] The statute of limitations for Plaintiff's claims under California Civil Code § 1750, *et seq.*, is 3 years. Accordingly for these claims the Class Period begins 3 years prior to the date of the initial filing to the present. Plaintiff's claims under California's Business and Professions Code § 17200, *et seq.*, California's Business & Professions Code § 17500, *et seq.*, and for breach of express warranty have a statute of limitations of 4 years. Accordingly the Class Period for these claims begins four years prior to the date of filing to the present.

90. There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

91. Common questions of law or fact exist as to all members of the Class. These questions predominate over the questions affecting only individual Class members. These common legal or factual questions include but are not limited to:

a. Whether Defendant marketed, packaged, or sold the Products to Plaintiff and those similarly situated using false, misleading, or deceptive statements or representations;

b. Whether Defendant omitted or misrepresented material facts in connection with the sales of their Products;

c. Whether Defendant participated in and pursued the common course of conduct complained of herein;

d. Whether the "Hypoallergenic" representation is likely to deceive reasonable consumers;

e. Whether Defendant's actions violate the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* (the "UCL");

f. Whether Defendant's actions violate the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* (the "FAL");

g. Whether Defendant's actions violate the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* (the "CLRA");

h. Whether Defendant's actions constitute breach of express warranty;

i. Whether Defendant should be enjoined from continuing the above-described practices;

j. Whether Plaintiff and members of the Class are entitled to declaratory relief; and

k. Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, and pay damages as a result of the above-described practices.

92. Plaintiff's claims are typical of the claims of the Class, in that Plaintiff is a consumer who purchased Defendant's Products. Plaintiff is no different in any relevant respect from any other Class member who purchased the Products, and the relief sought is common to the Class.

93. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the members of the Class she seeks to represent, and she has retained counsel competent and experienced in conducting complex class action litigation. Plaintiff and her counsel will adequately protect the interests of the Class.

94. A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual Class member will likely be relatively small, especially given the cost of the Products at issue and the burden and expense of individual prosecution of complex litigation necessitated by Defendant's conduct. Thus, it would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Moreover, even if members of the Class could afford individual actions, it would still not be preferable to class-wide litigation. Individualized actions present the potential for inconsistent or contradictory judgments. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

95. In the alternative, the Class may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final equitable relief with respect to each Class.

96. The requirements for maintaining a class action pursuant to Rule 23(b)(2) are also met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**Breach of Express Warranty**
**Cal. Com. Code § 2313**

97. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

98. Defendant made express warranties to Plaintiff and members of the Class that the Products they purchased were "Hypoallergenic."

99. The "Hypoallergenic" representation is a specific, affirmative statement of fact regarding the Products' formulation and allergenic profile which appears uniformly on every unit of the Products sold during the Class Period and was intended to, and did, become part of the basis of the bargain between Defendant and consumers.

100. This warranty regarding the nature of the Products marketed by Defendant specifically relates to the goods being purchased and became the basis of the bargain.

101. Plaintiff and Class members purchased the Products in the belief that they conformed to the express warranties that were made on the Products' labels.

102. As alleged herein, the Products contain linalool and other fragrance allergens that are widely recognized as common causes of allergic contact dermatitis and other allergic reactions, which is inconsistent with the express "Hypoallergenic" representation.

103. Defendant breached the express warranties made to Plaintiff and members of the Class by failing to supply goods that conformed to the warranties it made. As a result, Plaintiff and members of the Class suffered injury and deserve to be compensated for the damages they suffered.

104. Plaintiff and the members of the Class paid money for the Products. However, Plaintiff and the members of the Class did not obtain the full value of the

advertised Products. If Plaintiff and other members of the Class had known of the true nature of the Products, they would not have purchased them or would have been willing to pay less for them. Accordingly, Plaintiff and members of the Class have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

105. Plaintiff and Class members are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

## SECOND CAUSE OF ACTION

**Unfair Business Practices**
**Violation of The Unfair Competition Law**
**Bus. & Prof. Code §§ 17200, *et seq.***

106. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

107. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

108. A business act or practice is "unfair" under the Unfair Competition Law if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

109. Defendant has violated, and continues to violate, the "unfair" prong of the UCL through its misleading description of the Products. The gravity of the harm to members of the Class resulting from such unfair acts and practices outweighs any conceivable reasons, justifications, or motives of Defendant for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, Defendant engaged, and continued to engage, in unfair business practices within the meaning of California Business and Professions Code §§ 17200, *et seq.*

110. In accordance with California Business & Professions Code section 17203, and as Plaintiff lacks an adequate remedy at law, she seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

111. Through its unfair acts and practices, Defendant obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiff has been injured and requests that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, to disgorge the profits Defendant made on its Products, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

## THIRD CAUSE OF ACTION

**Fraudulent Business Practices**
**Violation of The Unfair Competition Law**
**Bus. & Prof. Code §§ 17200, *et seq.***

112. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

113. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

114. A business act or practice is "fraudulent" under the Unfair Competition Law if it actually deceives or is likely to deceive members of the consuming public.

115. Defendant's acts and practices of mislabeling its Products in a manner to suggest they are "Hypoallergenic" are fraudulent.

116. As a result of the conduct described above, Defendant has been, and will continue to be, unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, Defendant has been unjustly enriched by the profits it has obtained from Plaintiff and the Class from the purchases of its Products.

117. In accordance with California Business & Professions Code Section 17203, and as Plaintiff lacks an adequate remedy at law, she seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

118. Through its fraudulent acts and practices, Defendant has improperly obtained, and continues to improperly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the Class, to disgorge the profits Defendant has made, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

## FOURTH CAUSE OF ACTION
### Unlawful Business Practices
### Violation of The Unfair Competition Law
### Bus. & Prof. Code §§ 17200, *et seq.*

119. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

120. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

121. A business act or practice is "unlawful" if it violates any established state or federal law.

122. Defendant's labeling and marketing of the Products as "Hypoallergenic" constitutes an unlawful business practice within the meaning of the UCL because it violates California's Sherman Food, Drug, and Cosmetic Law, Health & Safety Code section 109875 *et seq.*, and the CLRA.

123. Under the Sherman Law, a cosmetic is misbranded if its labeling is false or misleading in any particular. Health & Safety Code § 111730. California's Sherman

Law adopts the federal cosmetic misbranding standard set forth in the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 362(a).

124. Defendant labeled and marketed the Products as "Hypoallergenic" despite the intentional inclusion of linalool, limonene and other fragrance allergens. This representation created a false and misleading impression regarding the Products' formulation and allergenic profile.

125. Moreover, because the Products' labeling was false or misleading in a material respect, the Products were misbranded under 21 U.S.C. § 362(a) and Health & Safety Code § 111730.

126. Plaintiff does not seek to enforce the FDCA, nor does Plaintiff seek to impose requirements different from or in addition to those imposed by the FDCA. Plaintiff seeks only to enforce California law that independently incorporates the federal misbranding standard and is actionable under the UCL. Because, as the FDA acknowledges, "[t]here are no Federal standards or definitions that govern the use of the term 'hypoallergenic,'" and the FDA has not specifically authorized the use of that term on products containing fragrance allergens, Plaintiff's claims do not seek to enjoin conduct that federal law expressly permits, nor do they impose any requirement that is "different from or in addition to" federal law.

127. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and members of the Class suffered economic injury, including payment of a price premium for Products that were falsely marketed as "Hypoallergenic."

128. By committing the unlawful acts and practices alleged above, Defendant has engaged, and continues to be engaged, in unlawful business practices within the meaning of California Business and Professions Code §§ 17200, *et seq.*

129. Through its unlawful acts and practices, Defendant has obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and all members of the Class, to disgorge the profits Defendant made on these transactions,

and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an order is not granted.

**FIFTH CAUSE OF ACTION**
**False Advertising**
**Violation of California Business & Professions Code §§ 17500, *et seq.***

130. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

131. Defendant uses advertising and packaging to sell its Products. Defendant disseminates advertising regarding its Products which by their very nature are deceptive, untrue, or misleading within the meaning of California Business & Professions Code §§ 17500, *et seq.* because those advertising statements contained on the labels are misleading and likely to deceive, and continue to deceive, members of the putative Class and the general public.

132. In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of California Business & Professions Code §§ 17500, *et seq.*

133. The misrepresentations and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code §§ 17500, *et seq.*

134. Through its deceptive acts and practices, Defendant has improperly and illegally obtained money from Plaintiff and the members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, and to enjoin Defendant from continuing to violate California Business & Professions Code §§ 17500, *et seq.*, as discussed above. Otherwise, Plaintiff and those similarly situated will continue to be harmed by Defendant's false and/or misleading advertising.

135. As a result, and as they lack an adequate remedy at law, Plaintiff and the Class are entitled to equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched and pray for relief as set forth below.

136. Pursuant to California Business & Professions Code § 17535, Plaintiff seeks an Order of this Court ordering Defendant to fully disclose the true nature of its misrepresentations. Plaintiff additionally requests an Order: (1) requiring Defendant to disgorge its ill-gotten gains, (2) award full restitution of all monies wrongfully acquired by Defendant, and (3) interest and attorneys' fees. Plaintiff and the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

## SIXTH CAUSE OF ACTION

**Violation of the Consumers Legal Remedies Act**
**California Civil Code §§ 1750, *et seq.***

137. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

138. This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* (the "CLRA").

139. Plaintiff and each member of the proposed Class are "consumers" within the meaning of Civil Code § 1761(d).

140. The purchases of the Products by consumers constitute "transactions" within the meaning of Civil Code § 1761(e) and the Products constitute "goods" within the meaning of Civil Code § 1761(a).

141. Defendant has violated, and continues to violate, the CLRA in at least the following respects:

a. § 1770(a)(5) pertaining to misrepresentations regarding the characteristics of goods sold -- specifying that misleading representations regarding ingredients violate the CLRA;

b. § 1770(a)(7) pertaining to misrepresentations regarding the standard, quality, or grade of goods sold; and

c. § 1770(a)(9) pertaining to goods advertised with the intent not to provide what is advertised.

142. Defendant knew, or should have known, that the labeling of its Products as "Hypoallergenic" violated consumer protection laws, and that these statements would be relied upon by Plaintiff and the members of the Class.

143. The representations were made to Plaintiff and all members of the Class. Plaintiff relied on the accuracy of the representations on Defendant's labels which formed a material basis for her decision to purchase the Products. Moreover, based on the very materiality of Defendant's misrepresentations uniformly made on or omitted from its Product labels, reliance may be presumed or inferred for all members of the Class.

144. Defendant carried out the scheme set forth in this Complaint willfully, wantonly, and with reckless disregard for the interests of Plaintiff and the Class, and as a result, Plaintiff and the Class have suffered an ascertainable loss of money or property.

145. Plaintiff and the members of the Class request that this Court enjoin Defendant from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above, pursuant to California Civil Code § 1780(a)(2). Unless Defendant is permanently enjoined from continuing to engage in such violations of the CLRA, future consumers of Defendant's Products will be damaged by its acts and practices in the same way as have Plaintiff and the members of the proposed Class.

146. Concurrently with the filing of this Complaint, Plaintiff is serving Defendant with notice pursuant to Civil Code § 1782(a) by certified mail, return receipt requested, notifying Defendant of the conduct described herein and that such conduct is in violation of particular provisions of Civil Code § 1770. Plaintiff presently seeks only injunctive relief under the CLRA. *See* Civil Code § 1782(d). If Defendant fails to provide appropriate relief within 30 days of receipt of Plaintiff's notice, Plaintiff will amend this Complaint to seek actual, punitive, and statutory damages under Civil Code § 1780.

## PRAYER FOR RELIEF

THEREFORE, Plaintiff, on behalf of herself and on behalf of the other members of the Class and for the Counts so applicable on behalf of the general public request an award and relief as follows:

A. An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiff be appointed Class Representative, and Plaintiff's counsel be appointed Lead Counsel for the Class.

B. Restitution in such amount that Plaintiff and all members of the Class paid to purchase Defendant's Products or restitutionary disgorgement of the profits

Defendant obtained from those transactions, for Causes of Action for which they are available.

C. Compensatory damages for Causes of Action for which they are available.

D. Statutory penalties for Causes of Action for which they are available.

E. Punitive Damages for Causes of Action for which they are available.

F. A declaration and Order enjoining Defendant from marketing and labeling its Products deceptively, in violation of laws and regulations as specified in this Complaint.

G. An Order awarding Plaintiff her costs of suit, including reasonable attorneys' fees and pre and post judgment interest.

H. An Order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Defendant as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein.

I. Such other and further relief as may be deemed necessary or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all causes of action or issues so triable.

DATED: October 29, 2026

Respectfully submitted,

Michael D. Braun
**KUZYK LAW, LLP**
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone: (213) 401-4100
Email: mdb@kuzykclassactions.com
Peter N. Wasylyk (pro hac vice forthcoming)
**LAW OFFICES OF PETER N. WASYLYK**
1307 Chalkstone Avenue
Providence, RI 02908
Telephone: (401) 831-7730
Email: pnwlaw@aol.com

*Counsel for Plaintiff*